

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMAL KEMO SAUNDERS,**

    Plaintiff,

v.                                      Civil Action No. **3:15CV82**

**SHAW,** *et. al,*

    Defendants.

### MEMORANDUM OPINION

Jamal Kemo Saunders, a Virginia inmate proceeding *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983.[1]  Saunders alleges that during his incarceration at the Powhatan Correctional Center ("PCC"), Defendants[2] subjected him to excessive force in violation of the Eighth Amendment.[3]  The matter is before the Court on the Defendants' Motion for Summary Judgment.  Defendants provided Saunders with the appropriate *Roseboro*[4] notice

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Saunders names the following correctional officers at PCC as defendants:  Officer Shaw; Officer Roads; Sergeant Amos; Sergeant Moore; and Captain Schaber ("Defendants"). The Court spells the Defendants' names and identifies their titles as set forth in the Motion for Summary Judgment.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[4] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

for their Motion for Summary Judgment. (ECF No. 31.) Saunders has responded. (ECF Nos. 34–35.) The matter is ripe for disposition. For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I.     SUMMARY OF CLAIMS

Saunders's claims stem from his resistance of security staff's attempt to remove his handcuffs, resulting in Saunders being chained to the cell door, necessitating a cell extraction and the use of pepper spray on Saunders. Saunders's claims against Defendants are best summarized as follows:

Claim One      Defendants subjected Saunders to excessive force when they chained him to his cell door for over an hour. (Compl. Attach. 2, ECF No. 1–1.)

Claim Two      Defendants subjected Saunders to excessive force by extracting him from his cell by administering pepper spray and through use of an electric immobilization shield. (*Id.* at 5.)

Claim Three   Defendant Roads sexually assaulted Saunders after the cell extraction. (*Id.* at 9.)

Claim Four:    Defendants subjected Saunders to excessive force when they forced Saunders to take an extremely hot shower. (*Id.* at 12.)

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

2

marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). Nor can a nonmoving party "'create a genuine dispute of fact through mere speculation.'" *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.3d 213, 214 (4th Cir. 1985)). Accordingly, "[t]he nonmovant can show that a dispute is genuine only if it provides sufficient evidence so that a 'reasonable jury could return a verdict for the nonmoving party.'" *Wiggins v. DaVita Tidewater LLC*, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006) (quoting *Anderson*, 477 U.S. at 248).

In support of their Motion for Summary Judgment, Defendants submitted their respective affidavits (Mem. Supp. Mot. Summ. J. Ex. 1 ("Schaber Aff.," ECF No. 30–1), *id.* Ex. 2 ("Amos Aff.," ECF No. 30–2), *id.* Ex. 3 ("Moore Aff.," ECF No. 30–3), *id.* Ex. 4 ("Roads Aff.," ECF No. 30–4), and *id.* Ex. 5 ("Shaw Aff.," ECF No. 30–5)), an affidavit of R. Deel, a registered nurse (*id.* Ex. 6 ("Deel Aff.," ECF No. 30–6)), and copies of Saunders's pertinent medical records (Deel Aff. Encl. A (ECF No. 30–7)).[5]

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. The Court previously

---

[5] The Court employs the pagination assigned to Enclosure A by the CM/ECF docketing system.

3

warned Saunders that "the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law that is sworn to under penalty of perjury." (ECF No. 22, at 2.) Saunders failed to comply with this directive. Instead, he filed a sworn "Memorandum in Support of 'Cross-Examine' for Defendants Motion for Summary Judgment," ("Memorandum," ECF No. 35) in which he simply realleges the facts as set forth in the Complaint.[6] Saunders also failed to file an affidavit or sworn statement as required by Federal Rule of Civil Procedure 56 despite the Court's prior warning that he must do so. (*See id.* (citing Fed. R. Civ. P. 56(c)(4))).

No need exists to catalog the entirety of inadmissible evidence previously submitted by Saunders because he fails to cite to the Court any evidence, such as his Complaint,[7] that he wishes the Court to consider in opposition to the Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Saunders's failure to submit admissible

---

[6] At the end of his certificate of service for the Memorandum, Saunders states the following: "This hereby certificate is sign under oath, penalty and perjury for the following enclosed/attached motion, statements, etc." (Mem. 15 (as paginated by the CM/ECF docketing system).) Such a statement fails to transform the statements in the Memorandum into admissible evidence. As explained above, the Court informed Saunders that it will not consider a sworn memorandum of law as evidence in opposition to a motion for summary judgment.

[7] In his Complaint, Saunders stated that his Complaint "is true of my own knowledge, except as those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true." (Compl. 2.) Saunders then "declare[d] under penalty of perjury the foregoing to be true and correct." (*Id.*) Such statements fail to transform the allegations in the Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "'mere pleading allegations'" (quoting *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001))).

4

evidence permits the Court to rely solely on the submissions of Defendants in deciding the Motion for Summary Judgment.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Saunders.

### III.   UNDISPUTED FACTS

On June 10, 2014, Defendant Amos accompanied Saunders to the hospital after Saunders swallowed cleaning fluid and inserted a part from a plastic bottle into his rectum. (Amos Aff. ¶ 4.) When Defendant Amos and Saunders returned to PCC from the hospital, Saunders was placed in a cell. (Roads Aff. ¶ 4.) Defendant Roads, Amos, and Shaw were present upon Saunders's return. (*Id.* ¶ 4; Shaw Aff. ¶ 4.) Defendant Shaw explained that he "had worked around Saunders for months before this incident and found him to be aggressive, unstable and unpredictable." (Shaw Aff. ¶ 4.) After being placed in the cell, Defendant Shaw noticed that Saunders "was fidgeting like he was going to do something." (*Id.*) Defendant Shaw's apprehension proved to be well-founded.

At approximately 11:10 p.m., Saunders complied with the orders to have his leg restraints removed. (*Id.*; Amos Aff. ¶ 4; Roads Aff. ¶ 4.) Defendant Roads unlocked the first handcuff through the tray slot and then Saunders pulled away in an attempt to pull the cuffs through tray slot. (Roads Aff. ¶ 4; Shaw Aff. ¶ 4.) One cuff remained on Saunders's wrist and the other handcuff was open. (Roads Aff. ¶ 4.) Defendant Roads grabbed the open cuff and held it. (*Id.*) Saunders had his feet on the door pulling back on the handcuffs with his weight and Defendant Roads held the loose end of the handcuff even though it was cutting his hand. (Amos Aff. ¶ 4; Shaw Aff. ¶ 4.) Defendant Amos grabbed the handcuffs to maintain control of them, but

5

Saunders continued to pull against Defendant Amos. (Amos Aff. ¶ 4; Shaw Aff. ¶ 4.) Defendant Amos sustained marks on his hands from trying to maintain a hold on the cuffs. (Amos Aff. ¶ 4.) Saunders refused to comply with the repeated orders of Defendants Moore and Schaber to stop resisting. (*Id.*; Roads Aff. ¶ 4.)

In order to control the situation and to prevent Saunders from injuring himself and staff, Defendant Schaber attached a waist chain to the loose end of the handcuffs through the tray slot and attached the other end of the chain to the outside of the cell door. (Schaber Aff. ¶ 4.) Restraining Saunders in this manner prevented staff from being harmed by having to hold the open handcuffs and it prevented Saunders from pulling the metal cuffs inside his cell where he could dismantle them or use them to injure himself or others. (*Id.*) Defendant Schaber remained with Saunders and spoke with him about complying with orders. (*Id.* ¶ 5.) While Saunders was restrained to the door, he was monitored and attended by staff at all times. (*Id.*; Amos Aff. ¶ 6.)

Defendant Schaber observed that Saunders had in his possession in the cell a plastic object with brown smears on it. (Schaber Aff. ¶ 5.) Defendant Schaber believed the object to be a piece of plastic that Saunders pulled from his rectum. (*Id.*) Defendant Schaber observed Saunders attempt to insert the object into his penis. (*Id.*) Defendant Schaber explained that as he spoke with Saunders, "he appeared to calm down and relax but his attitude would quickly change and he would try again to insert the item into his penis." (*Id.*) Saunders refused to give Defendant Schaber the object. (*Id.*) At approximately 11:35 p.m., Defendant Schaber notified the extraction team to put on their protective gear and come to the cell. (*Id.*; Amos Aff. ¶ 6.)

Defendant Amos responded to Defendant Schaber's call and observed that Saunders had peeled paint off the wall and was attempting to cover the cell door window. (Amos Aff. ¶ 6.) Saunders had a white object that Defendant Amos believed to be the piece of plastic that

6

Saunders had inserted into his rectum. (*Id.*) Defendant Amos also observed Saunders attempt to insert the object into his penis. (*Id.*)

At 12:05 p.m., Defendants Amos, Moore, Roads, and Shaw reported to Saunders's cell. (*Id.* ¶ 7.) The tray slot had feces smeared on it and Saunders was making threatening comments to staff. (Moore Aff. ¶ 5.) Sergeant Moore gave Saunders three orders to place his hands in the tray slot in order to be cuffed, but Saunders refused to comply. (*Id.*; Amos Aff. ¶ 7.) Sergeant Moore administered two half-second bursts of Oleoresin Capsicum ("pepper spray") into the cell through the tray slot. (Schaber Aff. ¶ 5; Moore Aff. ¶ 5; Amos Aff. ¶ 7.) Sergeant Moore sprayed the pepper spray on Saunders's face and not on his genitals or below his waist. (Moore Aff. ¶ 5; Amos Aff. ¶ 7.) Saunders then complied with orders to place his hands in the tray slot in order to have handcuffs applied. (Amos Aff. ¶ 7; Roads Aff. ¶ 5.) At this point, Saunders did not struggle with staff. (Schaber Aff. ¶ 5.) Defendant Moore applied the handcuffs to Saunders while Defendant Amos held his hands. (Moore Aff. ¶ 5; Amos Aff. ¶ 7.) Both Defendants Moore and Amos continued to hold the cuffs and Saunders's arms as staff slowly opened the cell door. (Moore Aff. ¶ 5; Amos Aff. ¶ 7.) The waist chain affixed to the door was removed. (Moore Aff. ¶ 5; Amos Aff. ¶ 7.) The extraction team then entered Saunders's cell. (Roads Aff. ¶ 5.) The extraction team placed Saunders on the floor so he could not kick staff while they applied the leg irons. (Moore Aff. ¶ 5; Amos Aff. ¶ 7.) Defendant Roads applied restraints on Saunders's legs, but did not grab or touch Saunders's genitals. (Roads Aff. ¶ 5; Schaber Aff. ¶ 5; Moore Aff. ¶ 5.) Sergeant Amos had the immobilization shield with him, but did not need to use the shield on Saunders because he was restrained with handcuffs. (Amos Aff. ¶ 7; Moore Aff. ¶ 6.)

The extraction team escorted Saunders upstairs and placed him in the shower for decontamination from the pepper spray. (Schaber Aff. ¶ 6.) The nurse was present at the shower. (Amos Aff. ¶ 9.) Defendant Moore held Saunders in the shower and was sprayed by the water. (Moore Aff. ¶ 7.) Saunders was not burned by hot water. (*Id.*; Shaw Aff. ¶ 6.) The water temperature was preset by maintenance staff and could not be adjusted by security staff. (Moore Aff. ¶ 7; Roads Aff. ¶ 6.) After Saunders showered, Defendant Schaber remained with Saunders for fifteen minutes while staff prepared a new cell for him. (Schaber Aff. ¶ 6.) Saunders was quiet and did not speak much. (*Id.*) Staff escorted Saunders to a cell on the A tier. (Roads Aff. ¶ 6.) The warden approved placing Saunders in five-point restraints. (Schaber Aff. ¶ 6.)

Saunders allowed the nurse to check the restraints but refused to have his vital signs checked. (Amos Aff. ¶ 9.) Saunders refused to consent to medical treatment or a penile examination. (Deel Aff. ¶ 5; *id.* Encl. A, at 3.) The nurse attending to Saunders wrote "no distress noted" on his medical chart. (*Id.* Encl. A, at 3.) At approximately 5:00 p.m. that day, Saunders was assessed by the nurse during sick call for an object in his penis. (Deel Aff. ¶ 6; *id.* Encl A, at 4.) Upon examination, the nurse noted no object and Saunders was referred to the doctor for further examination. (Deel Aff. ¶ 6; *id.* Encl. A, at 4.) On July 15, 2014, Saunders was transferred to Red Onion. (Deel Aff. ¶ 7.)

## IV.   EIGHTH AMENDMENT

### A.   Excessive Force Standard

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "'the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently

8

serious (objective component).'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force against his person, the objective component is less demanding relative to the subjective component. *See id.* With respect to the objective component, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1179 (2010); *see id.* at 1178 (observing that "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (quoting *Hudson*, 503 U.S. at 9)). Regarding the subjective component, the inmate must demonstrate "'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "Significant injury" is not required for a prisoner to state an excessive force claim; "[t]he 'core judicial inquiry' ... [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 38 (quoting *Hudson v. McMillian*, 503 U.S. 4, 7 (1992)).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." *Iko*, 535 F.3d at 239 (internal quotation marks omitted). These include:

> (1) 'the need for the application of force'; (2) 'the relationship between the need
> and the amount of force that was used'; (3) the extent of any reasonably perceived
> threat that the application of force was intended to quell; and (4) 'any efforts
> made to temper the severity of a forceful response.'

*Id.* (quoting *Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the

injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 130 S. Ct. at

1178. The extent of the injury "may suggest whether the use of force could plausibly have been

thought necessary in a particular situation" or "provide some indication of the amount of force

applied." *Id.* (internal quotation marks omitted). "From such considerations inferences may be

drawn as to whether the use of force could plausibly have been thought necessary, or instead

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a

knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (emphasis added) (citing

*Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)). As discussed below, Saunders fails

to establish that Defendants used excessive force against him.

## B. Use of the Waist Chain

In Claim One, Saunders argues that Defendants subjected him to excessive force by

locking him to his door handle with a waist chain for one hour. (Compl. Attach. 4–5.) Saunders

claims the use of the waist chain amounted to "pure 'torture'" and the tightness of the chain

caused cuts, bruises, swelling, and internal pain. (*Id.* at 5.) Here, the officers applied the waist

chain not maliciously or sadistically, but in order to maintain control of Saunders who was

actively resisting and attempting to pull the handcuffs into his cell.

With respect to the first and third factors, Saunders refused to allow officers to remove

his handcuffs and resisted the officers' attempts to remove them by pulling the handcuffs back

into the cell with his weight. Because one handcuff remained on Saunders's wrist and the other

was loose, and Saunders refused to comply with the Defendants' efforts to remove the left cuff,

10

the Defendants had to secure the cuffs by attaching a waist chain to the open handcuff and the door. (*See* Schaber Aff. ¶ 4.) Clearly a need existed to restrain Saunders. Moreover, in light of Saunders's recent attempts to cause serious harm to himself, the Defendants needed to secure the handcuffs so that Saunders would not injure himself or staff. (*See id.*) Thus, the first and third factors do not suggest Defendants acted with malice.

Moreover, under the second factor, a need existed to restrain Saunders; however, the degree of force used here was slight. While Saunders alleges that the chain was heavy on his wrist and caused bruising, cuts, and swelling, Saunders puts forth no evidence that he informed the officers that the waist chain was causing him pain. To the contrary, any pain Saunders suffered more likely resulted from his attempts to pull the handcuffs into his cell against the Defendants' weight. Saunders also adduces no evidence that he suffered any injury from being restrained by the waist chain. Instead, Saunders refused medical examination after the incident; however, the nurse noted that she observed no distress. (Deel Aff. ¶ 5; *id.* Encl. A, at 3.) Saunders saw medical staff later in the day, but complained only of an object in his penis. (Deel Aff. ¶ 6; *id.* Encl. A, at 4.) Finally, Defendants repeatedly ordered Saunders to present himself to be handcuffed and he refused. Defendant Schaber also remained with Saunders and spoke with him about complying with orders by presenting himself to be handcuffed. (Schaber Aff. ¶ 5.) Thus, the fourth factor also weighs in favor of Defendants. In sum, Saunders fails to demonstrate that Defendants' use of the waist chain in order to restrain him was employed maliciously and sadistically to cause Saunders pain. Rather, it was employed in order to maintain safety and order in the institution. Claim One will be DISMISSED.

C.   **Use of Pepper Spray and Immobilization Shield and Sexual Assault During Cell Extraction**

In Claim Two, Saunders contends that Defendants subjected him to excessive force when Defendant Moore sprayed pepper spray on his genitals during the cell extraction.[8]   Once again, the evidence demonstrates that Defendants used the pepper spray in a good-faith effort to restore discipline. *See Hudson*, 503 U.S. at 7.  With respect to the first factor, Defendants' use of pepper spray was warranted in order to carry out the cell extraction.  The uncontroverted evidence demonstrates that Saunders had an object in his cell that was smeared with what appeared to be feces and Defendants believed had been in Saunders's rectum.  Saunders also attempted to insert this object into his penis and to cover his cell door window.  Saunders had smeared fecal matter on the tray slot.  Saunders refused Defendant Schaber's requests for Saunders to give the object to him. (*See* Schaber Aff. ¶ 5; Moore Aff. ¶ 5.)  Saunders repeatedly refused orders to present his hands in order to be restrained.  Clearly, under the first factor, a need existed for the application of force because Saunders refused to follow the Defendants' orders.

Similarly, the second and third factor also weigh heavily for Defendants as Defendants needed to remove Saunders from his cell because he was harming himself and creating a dangerous situation for staff.  Saunders refused repeated orders directing him to place his hands in the tray to be handcuffed.  Saunders offers no evidence that he was compliant with the Defendants' directives prior to the use of pepper spray.  The uncontroverted evidence establishes that Defendant Moore administered two quick bursts of pepper spray through the tray slot directed at Saunders's face.  Saunders then became compliant. (*See* Moore Aff. ¶ 5.)  Sergeant Moore's use of the pepper spray was minimal and permitted Defendants to finally administer

---

[8] Buried in his Complaint, Saunders alleges that Defendant Moore sprayed him "once in my face, once in my upper chest, once in my nude penis and balls, and once in the open of my cell slot into my cell leaving me in cell suffercating [sic] for more than 10 seconds." (Compl. Attach. 6.)

handcuffs to Saunders. The record reflects that Defendant Moore employed a reasonable degree of force to subdue Saunders's disruptive conduct. *See Burns v. Eaton*, 752 F.3d 1136, 1139–40 (8th Cir. 2014) (alteration in original) (explaining that a "'a limited application of capstun [pepper spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force'" (quoting *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)).[9] The evidence refutes Saunders's assertion that the Defendants sprayed Saunders's genitals with pepper spray.

Finally, under the fourth factor, Defendants immediately ameliorated the effects of the pepper spray. After the extraction team had restrained Saunders and removed him for the cell, they took him to the shower in order to decontaminate him. Defendants also secured medical treatment for Saunders' after his exposure to the pepper spray as a nurse was present at the shower to examine Saunders. Saunders refused to be examined; however, the nurse noted that he

---

[9] Courts have repeatedly held that use of a limited amount of pepper spray or other chemical agent is an accepted non-lethal means of controlling unruly inmates. *See, e.g., Burns*, 752 F.3d at 1140 (citation omitted); *Rodriguez v. Elmore*, 407 F. App'x 124, 125–26 (9th Cir. 2010); *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996). Here, the minimal use of pepper spray through Saunders's tray slot was a reasonable use of force to subdue Saunders before the officers entered his cell to restrain and extract him. *See Banks v. Meck*, 531 F. App'x 205, 207–08 (3d Cir. 2013) (holding use of electric immobilization shield and pepper spray to extract inmate from cell was not excessive force when inmate siphoned urine and feces under cell and refused to be handcuffed); *Rodriguez*, 407 F. App'x at 125–26 (no triable issue existed when officers used pepper spray after inmates "repeatedly refused to comply with efforts to exit their cell and be handcuffed so that prison officials could search their cell for a missing metal object"). Here, the "limited application of [pepper spray was] much more humane and effective than a flesh to flesh confrontation with" Saunders. *Williams*, 77 F.3d at 763. By contrast, this was not an instance where the amount of force used was disproportionate to the need for force or the pepper spray was utilized for some other reason than to restore discipline. *See, e.g., Iko v. Shreve*, 535 F.3d 225, 239–40 (4th Cir. 2008) (explaining that officer's use of pepper spray at least four times on an inmate who was "docile and passive" and "proffered his hands through the door" tended to show the use of force was disproportionate to the need for force); *Walter v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (finding triable issue existed when officer sprayed inmate in his cell with "a super-soaker used for riot situations" and hit inmate "directly in the face and soaked the entire cell and bedding with spray")

appeared to be in no distress.  (*See* Deel Aff. ¶ 5; *id.* Encl. A, at 3; Schaber Aff. ¶ 6.)  Thus, Defendants clearly made an effort to temper the severity of the use of pepper spray.

In light of Saunders's continued attempts to cause himself harm, and his refusal to allow the officers to place handcuffs on him, the use of pepper spray on Saunders was not malicious or sadistic, but necessary to restore order.

Saunders also claims that Defendants used the immobilization shield during the cell extraction.  The uncontroverted evidence establishes that the immobilization shield was not utilized because Saunders allowed officers to place him in handcuffs.   (*See* Moore Aff. ¶ 6; Amos Aff. ¶ 7.)  Accordingly, Saunders fails to demonstrate that Defendants applied any force against him, much less excessive force, through use of the immobilization shield.

In Claim Three, Saunders also claims that Defendant Roads intentionally "sexually assaulted" him by grabbing his genitals.  (Compl. Attach. 9.)  This claim is quickly dispensed with because Saunders adduces no admissible evidence to support his contention.  To the contrary, Defendants swear that Defendant Roads did not grab or touch Saunders's genitals.  (Roads Aff. ¶ 5; Schaber Aff. ¶ 5; Moore Aff. ¶ 5.)

Saunders fails to demonstrate that Defendants' acted with a sufficiently culpable state of mind during the cell extraction, and thus, he fails to establish the use of excessive force.  Accordingly, Claims Two and Three will be DISMISSED.

### D.     Hot Shower

In Claim Four, Saunders alleges that after Defendant Moore administered the pepper spray, Defendants forced him to take a shower in "extremely hot water." (Compl. Attach. 12.)  Saunders contends that Defendant Shaw intentionally "went into the water-closet, turned the cold water off, and hot water on full . . . ." (*Id.*)  Saunders claims that the water burned and that he

14

"repeatedly told" Defendant Shaw that the water was "to[o] hot and to stop." (*Id.*) Contrary to Saunders contentions, the uncontroverted evidence establishes that Defendant Shaw did not adjust the water to make it hot. The evidence demonstrates that maintenance controls the water temperature. (*See* Moore Aff. ¶ 7; Roads Aff. ¶ 6.) Moreover, Defendant Moore held Saunders in the shower and was sprayed by the water and avers that the water was not too hot. (Moore Aff. ¶ 7.)

To the extent that Saunders contends that Defendants subjected him to excessive force by forcing him to shower in what he perceived was hot water, no reasonable juror could find that Defendants acted maliciously or sadistically. Instead, Defendants made Saunders take a shower in order to decontaminate Saunders from the pepper spray and temper the effects of that use of force. Saunders's minor discomfort during the decontamination does not suggest that any reasonable juror could characterize Defendants' conduct as a wanton infliction of pain. Saunders also fails to adduce evidence that he sustained any injury from showering in the purportedly hot water, thereby belying the notion that Defendants acted maliciously and sadistically by forcing him to remain in the shower. Even after Saunders was removed from the shower, Defendant Schaber remained with Saunders for fifteen minutes while staff prepared a new cell for him. (*See* Schaber Aff. ¶ 6.) Saunders was quiet and did not speak much. (*Id.*) Saunders refused immediate medical attention from the nurse; however, the nurse noted that she observed that Saunders was in no distress. (Deel Aff. ¶ 5; *id.* Encl. A, at 3.) Saunders fails to establish that Defendants acted with a sufficiently culpable state of mind. Accordingly, Claim Four will be DISMISSED.

## V. CONCLUSION

The Motion for Summary Judgment (ECF No. 29) will be GRANTED. Saunders's

Motion to Remove Exhibit No. 6 (ECF No. 37) will be DENIED because Saunders fails to

identify the procedural vehicle that authorizes the action that he seeks. Saunders's claims and

the action will be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

Date: /0-28-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

16